IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURA GLOBAL TECHNOLOGIES, LLC,
f/k/a/ DURA GLOBAL TECHNOLOGIES, INC.,
DURA G.P. and DURA OPERATING LLC,

Plaintiffs,                                    Civil Action No. 11-cv-10551-SFC-MKM

v.
                                               Hon. Judge Sean F. Cox

MAGNA INTERNATIONAL INC., MAGNA
MIRRORS OF AMERICA, INC., a/k/a
MAGNA DONNELLY, MAGNA
EXTERIORS AND INTERIORS, CORP.,
MAGNA EXTERIORS AND INTERIORS OF
AMERICA, INC., MAGNA EXTERIORS
AND INTERIORS USA, INC., AND MAGNA
EXTERIORS AND INTERIORS AMERICA
HOLDINGS, INC.

Defendants.

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO STAY LITIGATION PENDING REEXAMINATION**

Presently before the Court is Defendants' Motion to Stay Litigation Pending Reexamination. (Dkt. No. 30.) For the reasons stated below, the Court grants the motion. This case will be stayed until the result of the pending reexamination of U.S. Patent No. 6,766,617 ('617 Patent) in the United States Patent and Trademark Office is known with reasonable certainty (e.g., a notice of allowance confirming the patentability of certain claims). This case will become inactive on the Court's docket, but will be reactivated upon the Court being appropriately notified that the reexamination has concluded except for any appeal filed by Dura as to rejected claims.

1

## I. INTRODUCTION

This is a patent infringement case in which the Plaintiffs Dura Global Technologies LLC, Dura G.P. and Dura Operating LLC (collectively or individually "Dura") are alleging that Defendants Magna International, Inc., Magna Mirrors of America, Inc., Magna Exteriors and Interiors Corp., Magna Exteriors and Interiors of America, Inc., Magna Exteriors and Interiors USA, Inc., Magna Exteriors and Interiors America Holdings, Inc. (collectively or individually "Magna") are infringing the '617 Patent.

In this motion, Magna moves to stay this case until the completion of a pending and concurrent reexamination proceeding of the '617 Patent in the United States Patent and Trademark Office ("USPTO"). Shortly after Dura filed this lawsuit, Magna filed an ex parte reexamination proceeding in the USPTO asking the USPTO to invalidate a number of claims in the '617 Patent based on prior art patents not previously considered by the USPTO. As a preliminary determination, the USPTO decided that the prior art patents cited by Magna "raise a substantial question of patentability" as to the claims of the '617 Patent that Magna sought to have reexamined. The USPTO has issued a first "office action" rejecting all the claims, except one, that were the subject of the reexamination (the patentability of one claim was confirmed in the office action). Dura has added approximately 498 proposed new claims to the '617 Patent during the reexamination proceeding. The USPTO will have to determine whether or not new claims are patentable and whether the language chosen by Dura is acceptable.

The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore Orders that the motion will be decided

upon the briefs. For the reasons explained in this Opinion, the Court grants the motion to stay this case. The Court believes that it would be best for the USPTO to decide the patentability and final wording of the pending claims in the reexamination proceeding before the Court continues with this case. The "Conclusion" section of this Opinion explains when the parties may move to lift the stay.

## II. BACKGROUND ON USPTO REEXAMINATION PROCEEDINGS

United States patent law allows third parties, or even the patent owner, to have the USPTO reconsider the validity of claims in an issued United States patent through "reexamination" proceedings. Reexamination is another way for an accused infringer to challenge the validity of claims in a patent other than in a district court. In almost every patent infringement lawsuit, the accused infringer considers challenging the validity of a patent in a separate reexamination proceeding as part of its litigation strategy. As such, it is not uncommon for an accused infringer to request reexamination in the USPTO during the pendency of a lawsuit.

"The intent of Congress in establishing the reexamination procedure was to provide an inexpensive and rapid resolution that would provide the federal courts with the expertise of the USPTO in resolving patent claims." *Donnelly Corp. v. Guardian Indus. Corp.*, 2007 WL 3104794, *4 (E.D. Mich. 2007) (citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985)).

There are two types of reexamination proceedings: (1) ex parte reexamination and (2) inter partes reexamination. While both ex parte and inter partes reexamination proceedings allow third parties to have the USPTO reconsider the validity of claims of a patent, inter partes reexamination differs from ex parte reexamination in that inter partes reexamination allows a third party to participate in the reexamination proceeding after the initial submission of the reexamination request.

In this case, Magna filed an ex parte reexamination and so the Court will give a short

overview of an ex parte reexamination proceeding. The first step in an ex parte reexamination proceeding is for the third party, or even the patent owner, to file a request for reexamination. 35 U.S.C. § 302. In its request for reexamination, the party must establish that a prior art patent or printed publication, or combinations thereof, raises a "substantial question of patentability" of at least one claim in the patent. Within three months after a request for reexamination is filed, the USPTO will determine whether "a substantial new question of patentability affecting any claim of the patent" has been raised. 35 U.S.C. § 303. If the PTO does not find that a substantial question of patentability exists, the USPTO will terminate the reexamination. On the other hand, if the USPTO finds that a substantial new question of patentability exists, the reexamination proceeding will begin. The patent owner is allowed, although not required, to give a "statement" or response to the USPTO's determination that there is a substantial question of patentability and then the third-party requester is given the opportunity for a "reply" statement.

An ex parte reexamination is "ex parte" in the sense that after the third-party files the request for reexamination and any reply to any opening statement by the patent owner, the third-party is not permitted to participate any further in the reexamination proceeding. 35 U.S.C. § 304.

After any opening statements from the patent owner and third-party, the claims at issue in the reexamination enter the examination phase, which is similar to the examination phase of a non-provisional utility patent application. 35 U.S.C. § 305. The USPTO and the patent owner will correspond back and forth regarding the patentability of the claims, in light of the prior art at issue in the reexamination proceeding, in the form of "office actions" and "responses." *Id*. As part of this process, the patent owner is allowed to add new claims, or amend or cancel current claims, in the patent in order to distinguish his invention from the prior art. *Id*. However, "[n]o proposed amended

or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter." *Id*. The ability of the patent owner to amend its claims or add new claims makes reexamination proceedings very different from district court litigation. In district court litigation, a patent owner is not allowed to amend claims or add new claims to the patent.

At the conclusion of the reexamination proceeding, including any appeal, the USPTO will issue a certificate of reexamination "canceling any claim of the patent to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307.

The USPTO is required to expedite reexamination proceedings. In the language of the statute, the USPTO is required to handle reexamination proceedings with "special dispatch." 35 U.S.C. § 305.

### III. FACTS

Dura and Magna are competitors in the automobile industry. Both companies sell sliding rear windows for pickup trucks to automobile companies such as General Motors, Toyota, Chrysler, and Ford. Since 2007, the parties have been in constant litigation in several cases in this Court and in a companion case before Oakland County, Michigan Circuit Court.

Magna has requested two reexaminations of the '617 Patent.

Magna filed the first reexamination of the '617 Patent during the pendency of a first lawsuit between Dura and Magna in this Court. In 2007, Dura filed a first lawsuit against Magna alleging *inter alia* counts of trade secret misappropriation, unfair competition, and patent infringement concerning the '617 Patent and another patent (Case No. 07-cv-10945). Close to the then scheduled trial date in the first lawsuit, on December 23, 2009, Magna filed a request for reexamination of the

'617 Patent with the USPTO. (Reexam. Control No. 90/009,609.) In filing the reexamination proceeding, Magna asked the USPTO to find Claims 1-9 of the '617 Patent invalid in light of specific prior art patent documents. During the examination, Dura cancelled Claims 1 and 2 in the '617 Patent, amended Claims 3-5 and 8, and added additional new Claims 23-47 (Claims 10-22 were not examined). On January 18, 2011, the USPTO issued a reexamination certificate for the '617 Patent, which contained Claims 3-47.

In 2011, Dura filed the present lawsuit against Magna alleging that the rear sliding window that Magna is supplying for the Toyota Tundra infringes the '617 Patent. (First Am. Compl., Dkt. No. 23.) Fact discovery began on June 27, 2011 and this case is still in the fact discovery phase.

On January 12, 2011, Magna filed a second ex parte reexamination request for Reexamination of the '617 Patent (specifically Claims 3-8, 23-30, and 39-47) with the USPTO based on five prior art patents not previously considered by the USPTO. (Reexam. Control No. 90/009,871.) The USPTO found a "substantial question of patentability" existed as to Claims 3-8, 23-30, and 39-47 of the '617 Patent and instituted a second reexamination proceeding. On May 4, 2011, the USPTO issued an Office Action rejecting all the claims (except Claim 7) that were at issue in the reexamination based on the prior art cited by Magna. The USPTO confirmed Claim 7 as patentable over the prior art. On July 8, 2011, shortly after commencement of fact discovery in this case, Dura filed an Amendment and Response to the USPTO's Office Action. In the Amendment and Response, Dura amended three of its claims and added another 374 new claims to the '617 Patent. Five days later, on July 13, 2011, Dura added 124 proposed additional new claims to the '617 Patent through a supplemental amendment. (Supp. Am., Ex. 1 to Reply Br., Dkt. No. 35.) In total Dura, has added approximately 498 new claims to the '617 Patent in the reexamination proceeding,

bringing the total claims in the '617 patent to 543.

On August 17, 2011, Magna timely filed the present motion seeking to stay this case pending the outcome of the second ex parte reexamination proceeding.

### IV. ANALYSIS

In this motion, Magna Donnelly requests that this case be stayed pending the outcome of the reexamination proceeding. Significantly, in its reply brief, Magna states it "is willing to stipulate to lifting any stay that is entered by this Court and commence fact discovery once Dura obtains a notice of allowance from the PTO on any of the new claims in the reexamination of the '617 Patent." (Magna Reply Br. at p. 4, Dkt. No. 35.)

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). The decision of whether or not to issue a stay until the conclusion of a reexamination proceeding is within the sound discretion of the district court. *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602-03 (Fed. Cir. 1985). The decision is highly fact specific. A district court's decision on a motion to stay is normally not appealable because it is not a final judgment. *Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983) (holding that a district court's decision staying a lawsuit pending conclusion of a reexamination proceeding is not appealable).

In enacting the reexamination statutes, Congress contemplated that a district court would, in the right circumstances, stay a lawsuit until the conclusion of a reexamination proceeding. In fact, "early versions of what became the [ex parte] reexamination statute, 35 U.S.C. §§ 301-307 (Supp. V 1981), expressly provided for a stay of court proceedings pending reexamination." *Id.* at 1342.

However, Congress believed that an express provision was unnecessary because federal courts already have inherent power to stay a lawsuit pending the conclusion of the reexamination. Specifically, the legislative history states:

> The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of the United States patents in an efficient and relatively inexpensive manner.

H.R. Rep. No. 1037 Part I, 96th Cong., 2d Sess. 4 (1980), U.S. Code Cong. & Admin. News 1980, pp. 6460, 6463, *quoted by Gould v. Control Laser Corp.*, 705 F.2d at 1342.

Courts have generally identified the following possible benefits of granting a stay:

1. A stay will allow the district court to have the benefit of the USPTO first considering the prior art. This is an important benefit because of the USPTO's technological expertise.

2. If the reexamination results in the USPTO canceling claims in the patent, the lawsuit in the district court may be dismissed or the claims at issue in the litigation will be fewer.

3. During the reexamination proceeding, the patent owner may amend current claims or add new claims to the patent. A stay allows the USPTO and patent owner to finalize the claims and claim language before the parties continue with the litigation. A stay can prevent the Court and parties from wasting time and money addressing issues that ultimately are no longer relevant.

4. The outcome of the reexamination may encourage settlement.

5. A stay will give the district court the benefit of having the prosecution history of the reexamination proceeding. The prosecution history can then be used in claim construction or at trial.

6. The reexamination may reduce the cost of the district court litigation for the parties.

*See, e.g., Brass Smith, LLC v. RPI Indus., Inc.*, 2010 WL 4444717, *1-2 (D. N.J. 2010); *Donnelly Corp. v. Guardian Indus. Corp.*, 2007 WL 3104794, *4 (E.D. Mich. 2007); *Magna Donnelly Corp.*

*v. Pilkington N.A., Inc.*, 2007 WL 772891, *2 (W.D. Mich. 2007); *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471, *2-3 (S.D.N.Y. 2000).

> Courts have identified the following reasons that may weigh against granting a stay:
>
> > 1. A stay delays a patent owner's trial date and allows the accused infringer to continue infringing the patent-in-suit. The patent owner may not be able to prove the full scope of its damages so obtaining injunctive relief quickly is important to the patent owner.
> >
> > 2. Even if the validity of the patent is confirmed by the USPTO in the reexamination, the accused infringer is not collaterally estopped from making the same invalidity arguments in the district court.
> >
> > 3. Because the accused infringer is not collaterally estopped from raising the same issues in the district court that it raised in the ex parte reexamination, the ex parte reexamination may not reduce the overall cost for the parties, but actually increase the cost by giving the accused infringer two bites at the apple.

*Id*.

In considering whether or not to grant a stay, courts routinely consider at least the following factors: (1) whether a stay will simplify the issues in the case or conserve judicial resources; (2) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (3) whether discovery is complete and when (or whether) a trial date has been set. *See, e.g., Donnelly Corp. v. Guardian Indus. Corp.*, 2007 WL 3104794, *4; *Magna Donnelly Corp. v. Pilkington N.A., Inc.*, 2007 WL 772891, *2; *Gonnocci v. Three M Tool & Mach. Inc.*, 2003 WL 22870902, *2 (E.D. Mich. 2003). These factors are discussed in more detail below and applied to the facts of this case. The Court will not automatically grant a stay. There is nothing wrong with having parallel or concurrent district court litigation and ex parte reexamination proceedings where the facts warrant such parallel proceedings. *Vikase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The court is not required to stay judicial resolution in view of the reexamination proceedings."). However, some courts have found that "there is a liberal policy in

9

favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *Donnelly Corp. v. Guardian Indus. Corp.*, 2007 WL 3104794, *4 (quoting *ASCII Corp. v. STD Ent. USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)); *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471, *2-3 (S.D.N.Y. 2000); *Hewlett-Packard Co. v. Acuson Corp.*, 1993 WL 149994, *2 (N.D. Cal. 1993). *But see Fresenius USA., Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1305 (Fed. Cir. 2009) (Newman, J., concurring) ("However, if [stays are] routinely available to delay the judicial resolution of disputes, the procedure is subject to inequity, if not manipulation and abuse, through the delays that are inherent in PTO activity.").

### A. FIRST FACTOR: WHETHER A STAY WILL SIMPLIFY THE ISSUES OR CONSERVE RESOURCES

The first factor that courts routinely consider in deciding whether or not to grant a stay is whether a stay will simplify the issues in the case or make the case more efficient for the court and the parties.

Magna argues that granting a stay will simplify this case because Dura has filed approximately 498 new claims in the reexamination that could ultimately become part of this lawsuit and the claim language on these claims is not yet finalized. Magna argues that the original claims have been, or could be, amended during the reexamination. Magna further argues that the USPTO should first consider whether or not these claims are patentable in the reexamination proceeding before the parties and Court waste time with discovery or claim construction issues. Magna also notes that it would be useful for the Court to have the complete prosecution history of the second reexamination of the '617 Patent before conducting any claim construction.

Dura argues that Magna overstates the benefits of a stay. First, Dura points out that the

Scheduling Order stipulated to by the parties already delays the claim construction hearing until the results of the reexamination are known. In other words, Dura argues that a stay of the entire case is not needed because the Court's Scheduling Order grants a stay of claim construction until the completion of the reexamination proceeding. Second, Dura also notes that the USPTO has already confirmed the validity of Claim 7 of the '617 Patent in the reexamination proceeding so it argues that the case is already going forward (presumably Claim 7 is one of the asserted claims, although Dura has not yet filed its infringement contentions). Dura argues that "the preparation for an infringement suit brought on all the pending claims would not be significantly different than preparation for an infringement suit brought on Claim 7." (Resp. Br. at 11.) This is because Claim 7, as a dependent claim that depends from Claim 5 which in turn depends from Claim 3, incorporates all of the limitations from Claims 3 and 5 for any infringement or invalidity analysis.

After considering the parties' arguments and the facts of this case, the Court finds that staying this case will simplify the issues and allow the Court to handle this case more efficiently. Dura has added a tremendous number of new claims to the '617 Patent and over 500 claims remain at issue in the reexamination. It makes sense for the USPTO to determine the patentability and final language of these claims before the parties continue with the case. Many of these claims could be amended or canceled during the reexamination proceeding. While the Court's current Scheduling Order provides that claim construction will not begin until the results of the reexamination are reasonably known (i.e., the USPTO issues a "notice of allowance"), the parties would still have to expend money conducting discovery when the claims in the patent are not yet final. For example, in approximately one month, on December 1, 2011, Dura must set forth its infringement contentions. Approximately one month after Dura must submit its infringement contentions, on January 4, 2012,

Magna must set forth its non-infringement and invalidity contentions. It makes little sense to perform these tasks with the current state of the claims being uncertain. It is likely the parties would have to amend or re-draft these contentions after the reexamination proceeding. The Court concludes that staying this case until the reexamination results are known with reasonable certainty (i.e., until the USPTO issues a "notice of allowance" or similar notice) will narrow the issues and prevent the parties from wasting significant money in discovery.

>    B.   SECOND FACTOR: WHETHER A STAY WILL UNDULY PREJUDICE OR PRESENT A CLEAR TACTICAL DISADVANTAGE TO THE NON-MOVING PARTY

The second factor that courts routinely consider in deciding whether or not to grant a stay is whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party.

Dura argues that it will be prejudiced if a stay is granted because Magna is taking market share away from Dura by infringing on its patent rights. Dura points out that Magna is a direct competitor and both companies are competing for the same business. Dura wishes to get this case to trial as quickly as possible so that it can get a permanent injunction preventing Magna from manufacturing and selling products that infringe the '617 Patent.

In response, Magna argues that Dura will not be unduly prejudiced if the Court issues a stay. Magna notes that "loss of market share and price erosion are economic harms and are compensable by money damages." *Generac Power Sys., Inc. v. Kohler Co.*, 2011 WL 2648596 (E.D. Wis. 2011). Because lost market share is compensable by money damages, Magna argues that Dura will not be unduly prejudiced if the Court stays this case.

Dura also argues that Magna filed the second reexamination and moved for a stay in a bad faith attempt to delay a trial. Dura points out that Magna waited approximately four years after Dura

filed the first lawsuit that alleged infringement of the '617 Patent to file this second reexamination. In light of this delay, Dura argues that the Court should not reward Magna with a stay.

The Court finds Dura would not be unduly prejudiced by a stay. First, the Court finds that staying this case would not cause an undue delay in getting this case to trial. Dura has already agreed to stay the claim construction portion of this case until the USPTO issues a "notice of allowance" in the reexamination proceeding. (Sched. Order at pp. 7-8. Dkt. No. 29.) In the stipulated Scheduling Order, Dura has already agreed to stay this case at the conclusion of fact discovery and before going forward with the claim construction process. Fact discovery is set to close on January 18, 2012, approximately 3 months from now. (*Id*. at p. 4.) Staying this case an additional three months will not unduly prejudice Dura. In fact, staying this case will save the parties the expense of having to supplement or re-draft their infringement, non-infringement, and invalidity contentions after the USPTO reexamination concludes.

Second, the Court finds that Dura will not be unduly prejudiced because the stay will be relatively short in this case. It is important that "Magna is willing to stipulate to lift any stay that is entered by this Court and commence fact discovery once Dura obtains a Notice of Allowance from the PTO on any of the new claims in the reexamination of the '617 Patent." (Magna Reply Br. at p. 4, Dkt. No. 35.) In other words, Magna stipulates to lifting the stay as to allowed claims and despite any appeal by Dura as to rejected claims. This stipulation will make the stay relatively short in comparison to a normal reexamination. It is also important to note that the USPTO is required to handle reexamination proceedings with "special dispatch." 35 U.S.C. § 305. For example, the first reexamination of the '617 Patent lasted approximately 10 months from the filing date of the request for reexamination until the USPTO issued the Notice of Intent to Issue Reexamination

Certificate. This second reexamination should be handled even more expeditiously by the USPTO because the USPTO expedites reexaminations where the district court has entered a stay pending the results of a reexamination proceeding. On this point, the USPTO's Manual of Patent Examining Procedure states:

> Where a request for ex parte reexamination indicates . . . that litigation is stayed for the filing of a reexamination request, the request will be taken up by the examiner for decision 6 weeks after the request was filed, and all aspects of the proceeding will be expedited to the extent possible. . . Office actions in these reexamination proceedings will normally set a 1-month shortened statutory period for response rather than the 2 months usually set in the reexamination proceeding. Response periods may be extended only upon a showing of sufficient cause. Action on such a proceeding will generally take precedence to any other action taken by the examiner.

M.P.E.P. § 2286. In the reexamination of the '617 Patent proceedings, Dura should inform the USPTO that this case has been stayed pending the results of the reexamination proceeding. The USPTO will then expedite the reexamination proceeding making any delay in this case minimal.

### B. THIRD FACTOR: WHETHER DISCOVERY IS COMPLETE AND WHEN A TRIAL DATE HAS BEEN SET

The third factor that courts routinely consider in deciding whether or not to grant a stay is whether discovery is complete and when (or whether) a trial date has been set. This factor recognizes that granting a stay early in the case preserves judicial resources and saves the parties money. Once the case has progressed far along, a stay will not preserve judicial resources or save the parties significant money.

The Court finds that this factor weighs in favor of staying this case pending the outcome of the reexamination. Magna filed this second reexamination relatively early in this case, before the

filing of infringement, non-infringement, and invalidity contentions, and before claim construction proceedings.

### C.  WEIGHING OF THE FACTORS

The Court finds that the facts of this case and the factors discussed above weigh in favor of staying this case pending the outcome of the second reexamination proceeding. Given the large number of pending claims in the reexamination proceeding, including approximately 498 new claims added in the reexamination proceeding, it is prudent to stay this case. The Court also finds that Dura will not be unduly prejudiced in staying this case because it has already agreed to a stay at the close of fact discovery, which is approximately three months away. Staying the case before the filing of infringement, non-infringement, and invalidity contentions makes sense in light of the large number of pending claims in the reexamination proceeding.

### V.  CONCLUSION

Magna's motion to stay this case is granted. This case is stayed pending a "notice of allowance" or similar notification from the USPTO ruling on which claims are patentable. If the USPTO issues a final rejection as to certain claims and Dura files an appeal, the Court will lift the stay as to the claims determined to be patentable. This case shall be designated as "inactive" on the Court's docket. After the USPTO issues a notice of allowance, the parties shall confer about reactivating this case and attempt to agree to a modified scheduling order (the parties should only need to revise the Court's current scheduling order with revised dates). If any party believes a scheduling conference would be helpful, the Court will hold a scheduling conference. The parties are free to work with the Court's Technical Advisor, Christopher G. Darrow, in deciding upon an appropriate

Scheduling Order.


SO ORDERED

                        S/Sean F. Cox
                        Sean F. Cox
                        United States District Judge

Dated: October 24, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 24, 2011, by electronic and/or ordinary mail.

                        S/Jennifer Hernandez
                        Case Manager